Tice or Thies Research vs. Brown and Bain. Tice or Thies Research vs. Brown and Bain. Thank you for your patience as I pulled out the paperwork here. Good morning, I'm Paul Johnson. I represent Plaintiff and Appellant Tice Research, Inc. Before it ever retained Brown and Bain, Tice Research, Inc. specifically inquired of Brown and Bain whether it had any conflicts, providing Brown and Bain a written listing of telephone company conflicts, including Pacific Telesis and its affiliates, expressly including Pactel Cellular. Brown and Bain, however, proceeded to represent TRI, even though Brown and Bain had multiple conflicts of interest for which it never obtained TRI's informed written consent. As the California Supreme Court held in Chambers V.K., where the ethical rules require informed written consent, that requirement cannot be satisfied by anything less. I would be happy to address the specifics of each conflict, including Brown and Bain's admissions of facts establishing these conflicts. Unless the Court has questions at this time, however, my intent is to proceed with addressing the consequences of the Pactel Cellular conflict. This ethics violation has been conceded by Brown and Bain and was recognized by the District Court. The District Court refused to follow California law, even though California law governs both under the terms of the Representation Agreement and the principles of federalism reflected in the Federal Arbitration Act. Under California law, a representation in violation of the rules of professional conduct is unlawful and unlawful contracts are void. Under the California Supreme Court's decision in Loving and Evans v. Blick and subsequent California authority, where unlawfulness goes to the party's agreement as a whole, any arbitration clause in such an agreement is invalid. And where there was no valid arbitration clause, there is no valid arbitration award. The District Court misread the California rules of professional conduct concerning the provision for clients' informed written consent to any conflicting representation. Counsel? Yes. Didn't they tell you that they had a firm that was in Arizona that was handling some of these matters that might be a conflict and that they were going to erect a wall, like a Chinese wall, between them and their office? Shouldn't that have put your client on notice that there was something amiss and pursued this inquiry further? Your Honor, that information, and I particularly appreciate the reference to the wall there. Yes, sir. That is contained within the internal memorandum that Brown and Bain did internally address to its own senior management. And even though Brown and Bain wrote that 26-page memorandum describing the conflict and explaining it and laying it out and giving that to its own senior management, it did not write a single line to Tice Research, Inc. It did not provide that information to Tice Research. Furthermore, as the California Rural State and as the California Supreme Court has confirmed under Chambers v. K., there is only one way to consent to a conflict of interest, and that is informed written consent. And without that, the representation agreement is unlawful and void. What the district court did was citing to the California Rules of Professional Conduct provision with respect to the provision for informed written consent, the district held, excuse me, the district court held that the representation agreement was voidable, not void. And for that proposition, it cited the Rule 3310 and simply offered a c-cite to the restatement. And what the district court did in that regard was that it disregarded California law, holding that an unlawful contract is void and that the unlawfulness of a contract cannot be waived. Based on the erroneous conclusion that TRI waived its claim for the Pactel cellular conflict by not pursuing it in the arbitration proceeding, the district court held that the unlawfulness of the representation agreement could not be raised by TRI in seeking to vacate the arbitration award or in opposing Brown and Bain's motion to confirm the award. The district court disregarded California cases that state repeatedly that a challenge to an arbitration award based on unlawfulness of the underlying agreement as a whole may be raised for the first time in moving to vacate the award or in opposing a motion to confirm. Brown and Bain's attempt to read these cases to the contrary is unavailing. Mr. Johnson, it's such my recollection, this arbitration originated by reason of whose request? The TRI filed the original arbitration agreement pursuant to Section 14 of the representation agreement. Okay. Yes. And then in the arbitration, did it raise this issue of a void contract because of the misrepresentation as to the conflict? No, Your Honor. What TRI did was in briefing the UNISYS issue. I don't know if the court recalls that from the briefing, but there was an issue related to the status of Pacific Telecom. Before we get to that, this is what I'm getting at. Yes. You made a fairly persuasive argument, a persuasive argument, a very good argument about, look, here's this basic misrepresentation in the representation agreement. That renders the agreement void. Therefore, the provision in the agreement calling for arbitration is void. Therefore, the arbitration should never have proceeded in the first place. And yet TRI was the one who originated the arbitration proceeding. Now, isn't that a little inconsistent? No, Your Honor. And there are a couple of reasons. First of all, it's void. And I would cite the authority, for example, in Loving and Evans v. Blitz. Void. What do you mean when you say it's? It's void. I'm sorry. The agreement. Agreement under which you asked for arbitration. That's correct. That's correct. And the arbitration clause and the arbitration award itself. So if it's void, why did you ask for it? Any acts by your client can't validate it. My client, yeah, that is correct, Your Honor, and that is the point. And that's the distinction between other things that might be waived in an unlawful contract which cannot be waived by the parties. The public policy interest.  I didn't mean to interrupt, but I understand where you're coming from. Yeah, the public policy interest against the unlawfulness overrides any private interests of the parties. I know, for example, in the Loving and Evans case, this is one case which Brown and Bain attempts to distinguish. They make the argument that an arbitrator's authority must be challenged in the arbitration. And they try to suggest that this occurred in the Loving and Evans case. But the passage of the Loving and Evans decision quoted by Brown and Bain in its brief, however, indicates that in the arbitration, the defendant did not challenge the arbitrator's lack of authority, but only raised the plaintiff's lack of a contractor's license as a substantive defense on the merits. And, indeed, Brown and Bain omitted the court's discussion that explicitly confirms that in the Loving and Evans case, both sides jointly submitted their dispute to arbitration in line with the arbitration clause in the original agreement. And yet the California Supreme Court entertained the challenge to the validity of the arbitration award, holding that illegality of the underlying agreement may be raised in a proceeding seeking to confirm or vacate an arbitration award. I do want to point out, though, what TRI did say about this matter in the arbitration briefing. With respect, and it's in the discussion on the Unisys issue, and at the end, TRI simply stated what it knew. It had learned during the arbitration that Brown and Bain had represented Pac-Tel Cellular Inc. of Arizona. And it indicated to the arbitrator in its briefing that Brown and Bain had represented a related entity. It cited the letter that was signed by Paul White, the Pac-Tel purported waiver letter. And it told the Court that this issue was apparently submitted to an ethics expert, citing the deposition testimony of Jack Brown. That is all that TRI knew during the arbitration proceeding. There was not an attempt by TRI to hide this issue. In fact, if there is to be an argument made here that, I don't know, I guess Brown and Bain is arguing that there is some type of intrinsic unfairness about TRI being able to challenge the arbitration award after it was the party that initially initiated the arbitration, even though TRI did not know the basis, you know, for the invalidity of the underlying agreement. Well, the district court didn't do the district court conclude that TRI had actual knowledge four months before the arbitration of the evidence of conflicts? The district court did say that, Your Honor. Now, legally, it's irrelevant because it's a void agreement. But what the district court cites there is an interrogatory response which refers to Pacific Telesis Group. And why is it a void agreement again? Because it was an unlawful agreement. There was a conflict of interest for which there was no informed written consent. It being what? The representation agreement. The representation agreement, which includes the arbitration clause, was unlawful because it was entered into based on a conflict of interest without the client's informed written consent. And where do you get with unlawful? Where does that come, Your Honor? Where does that get you? The agreement is void. It's void ab initio. And that's what the court ---- Unlawful as compared to illegal? I don't think there's ---- Nothing talks about illegal, not unlawful. There's no distinction between illegality and unlawfulness. Well, I think there's maybe a difference between void and voidable. Well, there is a distinction of void and voidable, but an unlawful contract is void. And we've cited California authority that states that. You know, that's a nice label. I'm just not quite sure how it plasters onto this circumstance, unlawful. Unlawful. It violates some law? Yes, Your Honor. What? Which law? The Rules of Professional Conduct, Rule 3310, which prohibits an attorney from representing a party with a conflict of interest for which it has not obtained informed written consent. It also violates the policy of the law. That's reflected in the decision in Anderson v. Eaton, preceding the Rules of Professional Conduct, about the duty of loyalty. And the third prong under California Civil Code Section, I believe it's 1667. We lay it out in our opening brief. Immorality is the third prong, contrary to public morals. It's certainly what the courts have declared in California with respect to the duty that a lawyer must hold inviolate to be loyal to his client. It cannot be disregarded. That's a public policy interest. It goes to the heart of the justice system. Reiterate for us exactly what you want us to do. Thank you, Your Honor. If I ask that the arbitration award must be vacated under the authority that we've cited, the summary judgment in favor of Brown and Bain must be set aside, and based on the undisputed evidence, at least with respect to this one conflict of interest, I think we've submitted undisputed evidence with respect to all of them, but one suffices. Partial summary judgment must be entered in favor of TRI for its fees and expenses incurred plus interest. Why don't you retain the rest of your time? We'll hear from the other side, and then you'll have ample opportunity to respond. Thank you, Your Honor. There it is. That's a pretty clear argument. It's yours. Good morning, Your Honor. Paul Rennie representing Brown and Bain, and may it please the Court. Before I start my argument, I would like to invite the Court's attention to what I found to be a page citation error in footnote 2 on page 19 of our brief where we cite to the supplemental excerpt of the record 92, we say at page 79 it should be page 84. That same document, however, is cited in the excerpts of record which were filed by the plaintiff at page 42, I mean at section 42, page 13. And it is one of the documents which the district court found that was in the possession and was cited by TICE research in connection with the submission to the arbitration panel. Your Honor, I believe the essential question in this case is may a party who invokes an arbitration provision and during the course of discovery related to that arbitration petition becomes aware of facts which it believes, and as it now alleges in this Court, which it believes voids the contract under which it invoked the arbitration, but nevertheless goes forward never raising the issue with the arbitrator and in fact submitting the documents and arguing those documents only that they go to part of the malpractice claim, can he then, after he loses at the arbitration, can he then turn around and say, oh, no, we should never have had an arbitration because there were facts which I knew of which rendered the arbitration clause void. The other side seems to say that Loving and Evans says, yes, you can. No. What Loving says is that where the party who invokes it, because in all those cases it is the contractor or it is the broker who is invoking the power of the arbitrator or the court for relief, and the court says it's raised as a defense in all of them, so we respectfully submit in a sense it's not where the court says for the first time. It's raised as a defense so that the arbitrator, for whatever reason, decided that equity or didn't have to follow the law, but it said you cannot, you as a contractor, you as a broker, cannot come into a court of law or you can't invoke an arbitration provision to enforce whatever rights because you don't have any rights. What the district court found in this case, and however you want to characterize it, whether you call it estoppel or you call it waiver or you call it that the parties have agreed to go forward, because remember arbitration is a matter of contract, and by going forward when you are aware that you may have facts, you're aware of facts that would give you a claim to say that, hey, I can't be forced into arbitration, but you go forward keeping them in your back pocket saying, if I lose, I'll go to some court, or when they try and confirm the award, I'll say, hey, should never have been here. What the California Supreme Court has said, cite those cases in our brief, and there's no dispute on the law that a party who knows that it has a defense to a claim of jurisdiction in an arbitration cannot sit silently by, wait to see about the outcome, and then go to some court to get relief. And that's exactly what has happened in this case. What's the last case that so holds that you want me to read before I move on? Well, the two cases that I would invite the Court's attention to are on page 33 and 34 of our brief. One is Fycheck v. Southern Pacific, and the other is Nieheim v. NEC Electric. Fycheck's a federal case. Both are Ninth Circuit cases. And the language, particularly on page 33 from or on page 34 from Niamh is particularly good, says we have long recognized the rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result. Once a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority. And counsel has indicated in his brief that he thinks this matter is before your honors on a de novo. Insofar as the confirmation of the arbitration award, Judge White made findings of fact so that the test here is abuse of discretion. And he found that what Tice Research had in their possession and the knowledge that they had was one in the arbitration demand itself. There's a reference to alleged conflicts that Brown and Bain had. In the answers to interrogatories, when Brown and Bain specifically asked them, what are the conflicts, the Pacific Telesis was identified as the conflict. He had before him, although there's some they disputed in the record, although the district court judge found that there was not a dispute, and that is that he had in front of him Brown and Bain's internal conflict check, which identified PacTel Cellular of Arizona being a wholly owned subsidiary of PacTel Cellular, being a wholly owned subsidiary of PacTel, being wholly owned in the Pacific Telesis Group, so that he made findings of fact in reaching the conclusion, as he states in his opinion, that Tice Research had in its possession and had in its knowledge all of the facts which they are now alleging give them a basis for saying, hey, this contract was void and we had no, you cannot enforce the arbitration award. In the reply brief, to which you have not had an opportunity to respond, on page 22 appears the following. B&B especially cannot rely on a theory that TRI implicitly consented to arbitrate its causes of action for B&B's PacTel Cellular conflict or other conflicting representations that were not litigated in the arbitration. As recognized in FICHEC, on which B&B relies, the implication of an agreement to arbitrate is predicated on the submission of that precise issue in the arbitration. Quote, FICHEC concedes that the precise issue, which he now sees to litigate, was in fact submitted to the arbitrators. So they say because that's a difference here, FICHEC doesn't apply and control. Your response to that is? Well, I think that the fact that they chose not to frame it in those exact terms, they did submit those exhibits to the arbitrator, and the arbitrator found that there was no conflict that affected the malpractice claim. They chose not to attack his jurisdiction. So I don't believe that that attempted distinguishing of FICHEC, plus FICHEC is only one in a long line of cases that do not allow a party to lay back in the weeds and see what the outcome is going to be in the arbitration. Let's say the same thing about NIGAN. And turning to the assuming that we are correct, as we respectfully submit we are, that the arbitration that Judge White was correct in confirming the arbitration, we believe that that precludes any attack on or any claim on that there was something wrong with granting summary judgment because the complaint is articulated in the identical terms of what was requested in the arbitration. That is claiming that Brown and Bain somehow or other committed malpractice, which the arbitrator in a very carefully worded opinion went through every act that they alleged was malpractice. And in that regard, counsel in his brief cited the language of the arbitrator in which he talked about the arbitration. The words that they quoted was his statement about almost unmitigated disaster as if that was some implication that the arbitrator thought that Brown and Bain had done something wrong. I would invite the court's attention to page 25 of the penance. He talks about the millions of dollars, unbilled time. Yes, but even before that, Your Honor, the paragraph before was the arbitrator saying, as a matter of law, I should give Brown and Bain $877,000 of unpaid fees. That's the context in which he gave it. He said, but I think I can do equity. He said, I don't think I have to follow the law. I can do equity and I don't think money should change between either parties in this case. So he was not commenting on how he felt about that there was something wrong with the with the conduct of Brown and Bain. Are you arguing that it really doesn't make any difference whether this is a void or voidable representation agreement? It doesn't matter if it was a void agreement. They went forward on it anyway and you have law to support you. They went forward with the arbitration anyway. And if it's voidable, for sure, you're going to. Yes, Your Honor. What we are saying is that the arbitration went forward as a matter of consent when the party who is now complaining was aware of the facts. I understand that. And to that extent, then you're saying it doesn't matter whether we characterize this agreement as void. It just doesn't matter. That is correct, Your Honor. Has it ever been characterized as voidable by anybody? I believe that the district court judge used the expression that it was voidable in the context that the conflict could be waived if their conduct was such that they were prepared to go forward. I think he used the term that it was voidable, that it was his interpretation in the context of for purposes of the arbitration. Was there a showing or was there a disclosure sufficient or was there a failure to disclose at the time the representation agreement was entered into which would have rendered it void under California law? I don't believe so, Your Honor. I think there was sufficient. There was not. In the first place, I don't think there was a conflict. But I'm not. I don't. I think that that that the whole focus of plaintiff, that they're that it's a slam dunk, that there was a conflict. I don't believe there was a conflict between representing the fact tell cellular of Arizona in a totally unrelated matter and representing Mr. Tice. But I don't think one needs to reach that discussion. And, in fact, Brown and Bain ended up suing Pacific Telesis on behalf on behalf of Tice. So that. But I. But certainly that is not the key. Now, counsel has has cited in his brief that there were some additional conflicts which he has become aware, alleged conflicts, GTE, US West and AT&T. The district court judge found, and I believe correctly, that those weren't conflicts. I believe that's correct. But again, the fact that there may have been some additional conflicts does not change the analysis of what took place at the arbitration. Is the sole basis for the claim that the arbitration agreement itself is not functional, is conflicts. That's his sense. Are those conflicts? Are conflicts waivable? Yes. The problem I'm having with Fichek is that in Fichek, the arbitration agreement itself wasn't being attacked as illegal or or defective. It was that the arbitrator didn't have the power under the agreement to decide this issue. That's somewhat different than an attack on the agreement itself, isn't it? But it's it's the it is it's when you say the power, it's the question is, does the have did the parties confer power on? Well, but the arbitration there's there's no problem at all with the arbitration agreement itself. That was an issue in Fichek. It was just that whether under that agreement, the arbitrator had the power to decide this issue. Here we have a slightly different case where the arbitration agreement itself is under attack as being invalid. But there's no question here that that the arbitrator had the power as long as the parties consented to it. In the Brown and Bain situation, no question that he had the power if both parties consented to it. You know, the language new contract popped up in one of the quotes in your brief. You were quoting another case, a theory of new contract, just thinking how that might work. I suppose you might argue that, well, you have a void contract. But then during the course of the arbitration, you figure, yeah, we got a void contract. But then you agree to go forward anyway with the arbitration. You're now agreeing to go forward in spite of this. Yes. Maybe that's the theory of new contract. I don't know. Absolutely. We believe that is the analysis of many of the cases. Some talk in terms of waiver. Some talk in terms of estoppel. And some talk in terms of saying arbitration is a creature of contract and it doesn't have to be a written contract. Do the parties act in a way which confers an agreement to arbitrate? Yeah. And that's that's the first that can occur during the course of the arbitration, I guess. Absolutely. Yeah. That's interesting. Do you have anything else, counsel? No. We've submitted, Your Honor. Thank you. Thank you, Your Honors. Before I finish, I do want to return to the California authority. Multiple cases that hold explicitly that the issue of unlawfulness of the underlying agreement may be raised for the first time. May be raised? Yes. May be raised for the first time in opposition to a motion to confirm or by a motion to vacate the arbitration award. I mean, that's the holding in Loving and Evans v. Blick. That's the holding. Excuse me. It's stated, although I don't think it's the holding, I think it's dicta, but it's stated explicitly in South Bay Radiology. It's also stated in Lindenstat and it's stated in the Alternative Systems case. The California law is very clear on that. And in the case of Fitchek and Yam, in those cases you do not have an underlying unlawful agreement. And, in fact, what the Court states explicitly, as Your Honor noted, is that the Court there states that if you're proceeding on the basis of an implied agreement, that it only extends to the precise issue litigated in the arbitration. What's the problem with the argument that you really waive, conflicts can be waived, and you just waive this thing and decided to wander into it anyway, so we're not going to allow you now to come forward and say, well, I lost, but guess what? Your Honor, I would like to be precise on language here. What Rule 3.3.10 says is that consent may be given to a conflicting interest. It doesn't say that it may be waived. And the implication in brown and beans is that it can't be waived either. Yes, Your Honor, because it's an unlawful contract and unlawfulness cannot be waived. And we provided the Court with multiple California authorities, as we did the district court, that unlawfulness cannot be waived. What do you do with what Judge Thompson was talking about? Well, you've gotten a new contract here by behavior. And that's the argument they're making with respect to Feitschak and Niem. And there are two things. First of all, in that case, they proceed into the arbitration with this implied contract. I guess the argument here is that assuming that TRI discovers this in the course of the arbitration, that then all of a sudden this implied contract then comes springing to bear. And it's wrong as a factual matter. There's no factual predicate because the arbitration complaint is explicitly stated that it's brought pursuant to the legal services agreement, section 14. The arbitrator's award explicitly states that the arbitration was brought pursuant to the legal services agreement at paragraph 14. It's also wrong as a factual matter because California law distinguishes between a parent and a subsidiary with respect to a conflict of interest. I was somewhat stunned to hear counsel say that there is now an argument by Brown and Bain that they don't concede that there was a conflict with respect to Pactel Cellular, Inc. of Arizona. I mean, first of all, their own internal memorandum lays out very clearly the reason why those two entities have to be treated the same for conflict purposes. Secondly, they state in their appellate brief that they did, in fact, represent Pactel Cellular. And also with respect to Airtouch Communications, formerly known as Pactel Corporation, they state in the footnote in their own brief that as far as they are concerned, Pacific Telesis and Airtouch Communications are the same entity for conflict purposes. So they have no standing to come now and suggest maybe there wasn't a conflict after all. This is critical with respect to the factual allegations and the one document that the district court cites for this allegedly clear knowledge. The reference in that interrogatory response is to Pacific Telesis Group. It is not a reference to Pactel Cellular. And there is nothing in there that shows a reference to Pactel Cellular. And as they stated in their prior brief to this Court in the earlier appeal, at page 17, footnote 2, there is not an automatic treatment under California law of parent and subsidiary for conflict of interest purposes. Now, that may not be a good rule. Maybe there should be an automatic treatment. But that is the law as we take it, and it's the law as we find it. And California must be respected not only by the district court, but by the parties in making claims. And so, therefore, when we learn that Brown and Bain represented the Arizona subsidiary, that did not give us knowledge of the representation of Pactel Cellular as parent. And the document to which counsel refers here at the supplemental excerpts of record, document 92, page 84, is the new matter memorandum, which only identifies the legal relationship of parent and subsidiary. And under California law, that did not put us on notice of a conflict of interest. Only upon finding the internal memorandum do we discover the conflict of interest. And only upon receiving answers to interrogatories in 2002 do we find out about the additional conflicts of interest. Now, including errata, were those all determined during the course of the arbitration? Was all that information acquired during? No, no, Your Honor. No, Your Honor. The additional conflicts of interest were, first of all, there is no knowledge of any conflict of interest during the arbitration. With respect to a conflicting representation, a conflicting relationship as to unisys, yes, and that's what was argued. But there was no knowledge of a conflicting representation which rendered the underlying legal services agreement void. That was discovered afterwards. Beyond the fact of the conflicts of interest that you allege, was there any actual damage identified as a result of those conflicts? Absolutely, Your Honor. That is what we allege now. No. That is what we allege now. It is what? Well, first of all, that is a matter that we would proceed to prove up at trial. But I can give an example, and this refers to, although I think it's legally irrelevant here, but the statement by the arbitrator. The arbitrator, by the way, when he refers to the unmitigated disaster, says that in the conclusion of a statement of reasons that it's all about how Brown and Bain litigated the case. I originally intended to quote the paragraph quoted by Brown and Bain and also the subsequent one. But for space reasons, I condensed it out. But in that subsequent paragraph, it talks about the many mistakes that were made by Brown and Bain. It says many of them did not rise to the level of legal malpractice. And I count throughout that statement of reasons at least 15 references where the arbitrator defers to counsel's professional judgment or tactical calls. Brown and Bain had absolutely no right to be making mistakes, exercising its judgment on behalf of Teich Research when it had a conflict of interest, when it was being paid by parties on the other side. And both Pacific Telesis and Pactel Cellular were parties on the other side in the litigation. And we have established, based on undisputed facts, that GTE Mobile had an interest in seeing these patents held invalid. U.S. West had an interest in seeing these patents held invalid. Mr. Legod admits that that list of conflicts that TRI presented were the entities that TRI intended to go after. And the litany of the licensing letters that go between Brown and Bain and Teich Research show also that Brown and Bain knew during the litigation that TRI was continuing to make notice claims to go after these parties. There absolutely were conflicts of interest. And they were discovered after the arbitration. But under California laws, I said I wanted to conclude with this. And I want to refer to Loving and Evans' case as my last reference here. While they say that it was the contractor who brings the claim, the paragraph that is missing in the middle of the ellipses from their quotation in their brief is, in fact, a reference to that both parties jointly submitted the issue to arbitration in line with the original arbitration agreement between the parties. It appears even under in Loving and Evans, there was a court that raises sua sponte the lack of jurisdiction or the lack of authority as a result of the unlawfulness. Thank you, counsel. Thank you. Thank you both. The case just argued is order submitted. Thank you. And as soon as the well clears, we'll call the next one. Beal versus the Commissioner of Internal Revenue.
judges: Weiner, Thompson, Trott